THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| STEPHEN SEYMOUR and JEANNE SEYMOUR,<br><br>Plaintiffs,<br><br>v.<br><br>GARFIELD COUNTY; JAMES D. PERKINS; and DOES 1-5,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' [16] MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 4:21-cv-00047-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Plaintiffs Stephen Seymour and Jeanne Seymour (together, the "Seymours") filed this civil rights action under 42 U.S.C. § 1983 against Defendants Sheriff James D. Perkins ("Perkins") and Garfield County (the "County") (together, the "Garfield Defendants").[1] The Seymours allege the Garfield Defendants violated their constitutional rights when Perkins allegedly received the Seymours' stolen business computers and searched them without a warrant.

The Garfield Defendants filed a motion for judgment on the pleadings ("Motion")[2] asserting the defense of qualified immunity against all the Seymours' claims against Perkins.[3] This defense has two prongs: That no violation of rights occurred, and that if a violation occurred, it was not a violation of clearly established law.

---

[1] Complaint, docket no. 2, filed Apr. 29, 2021.

[2] Defendants' Motion for Judgment on the Pleadings ("Motion"), docket no. 16, filed Aug. 25, 2021.

[3] Motion at 4–13.

The Garfield Defendants also argue that the absence of constitutional violations by Perkins defeats the Seymours' claims against the County.[4]

The Seymours oppose[5] the Motion.

Based on the parties' briefing, the pleadings, and the relevant law, the Motion is GRANTED in part and DENIED in part.

## Table of Contents

Background .................................................................................................................... 3
    Summary of the Motion ............................................................................................ 6
Standard of Review ........................................................................................................ 6
Analysis .......................................................................................................................... 7
    I. Analytical Framework for Qualified immunity ...................................................... 7
    II. Claim by Claim Analysis – Claims against Perkins ........................................... 10
        A.    Unlawful Search and Seizure Claims: ...................................................... 10
            (1)    The Seymours adequately pleaded their Unlawful Search and
                    Seizure Claims against Perkins. ...................................................... 10
            (2)    The Seymours fail to show the alleged Fourth Amendment search
                    and seizure were violations of clearly established law. ................ 13
        B.    The Procedural Due Process Claim against Perkins will be dismissed
            because the Seymours have adequate postdeprivation remedies: ............. 14
        C.    The Substantive Due Process Claim against Perkins will be dismissed
            because Perkins' alleged actions and the Seymour's alleged injuries are
            not conscience shocking. .......................................................................... 19
        D.    Conspiracy Claim against Perkins: ........................................................... 23
            (1)    The Seymours' adequately pleaded an underlying constitutional
                    violation and the elements of a conspiracy. .................................. 23
            (2)    The Seymours fail to show the alleged civil conspiracy was a
                    violation of clearly established law. .............................................. 24
    III.    The Unlawful Search and Seizure Claims and the Conspiracy Claim against the
        County will not be dismissed because the Seymours' adequately pleaded these
         constitutional violations. .......................................................................................... 25
    CONCLUSION AND ORDER .................................................................................... 25

---

[4] *Id*. at 13.

[5] Memorandum Opposing Defendants' Motion for Judgment on the Pleadings ("Opposition"), docket no. 19, filed Sep. 29, 2021.

## BACKGROUND[6]

The Seymours own and manage several businesses in and around Escalante City in Utah.[7] The Seymours allege that on the night of June 9, 2020, Travis Seymour ("Travis"), their now estranged adult son, stole property from the Seymours' business, including two computers (the "Computers").[8] At the time of the theft, Travis was employed by one of the Seymours' businesses.[9]

The Seymours reported the theft to Deputy Sheriff Colby Mitchell ("Deputy Sheriff Mitchell") in Perkins' office on June 10, 2020.[10] Travis was fired on June 11, 2020, and told not to enter any of the Seymours' businesses or properties.[11] After Travis was fired and told not to enter any of the Seymours' properties, Travis entered the premises of another of the Seymours' family businesses and removed more equipment and materials.[12] The Seymours reported this second instance of theft to Deputy Sheriffs Mitchell and Ray Gardner.[13]

---

[6] The background of this case is drawn from the Complaint, the parties' memoranda, and a letter the Seymours' attached to their Opposition, which the Seymours reference and incorporate into the Complaint. Complaint ¶ 38 at 7; Opposition at 3; Exhibit 1 ("Letter"), docket no. 19-1, filed Sep. 29, 2021. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.")

[7] Complaint ¶ 25 at 5.

[8] *Id*. ¶ 33 at 6.

[9] There is some discrepancy in the documents regarding which business entity Travis was employed with, but this discrepancy is not material and does not change the outcome of this Order. The Complaint alleges "The Seymours are the owners and managers of several businesses in and around Escalante City, Utah, including High Adventure Rentals, LLC and BW Bowmar, LLC" (Complaint ¶ 25 at 5) and that Travis was "employed by the Seymours' parent company," Complaint ¶ 26 at 5. The Letter to Perkins dated June 23, 2020 says "Travis was terminated from his employment with High Adventure Rentals, on June 11, 2020." Letter at 1. And in their Opposition, the Seymours explain that Travis was actually "employed by Seymour Solar, LLC, not High Adventure." Opposition at 2, n.4.

[10] Complaint ¶ 34 at 6; Letter at 1.

[11] *Id*.

[12] Complaint ¶ 35 at 6; Letter at 1.

[13] *Id*.

Despite the Seymours' reports that Travis stole the Computers, Perkins allegedly seized the Computers "on or about June 19, 2020 and he and/or his office searched the Computers without a warrant, subpoena, probable cause, exigent circumstances, or other legal basis."[14]

"On June 23, 2020, counsel for the Seymours served a letter ("Letter")[15] on Perkins explaining their 'desperate need' for the return of their Computers, demanding their immediate return, and requesting that Perkins provide 'a copy of the investigative subpoena or search warrant which authorizes their seizure and retention.'"[16] The Letter refers to a conversation between Jeanne Seymour ("Jeanne") and Perkins where Perkins confirmed that the County had the Computers and were turning them over to the State Bureau of Investigations ("SBI").[17]

As communicated by Perkins in his conversation with Jeanne, Perkins did not return the Computers to the Seymours, but directed his employees to turn over the Computers to the State Bureau of Investigations ("SBI").[18]

After educating SBI about what had happened and involving legal counsel, the Seymours recovered their Computers from SBI several weeks later.[19] When the Seymours recovered the Computers, "a forensic analysis revealed that they were accessed and searched before being turned over to SBI," and "that confidential tax documents and financial information were accessed and downloaded."[20]

---

[14] *Id*. ¶ 37 at 6.

[15] Letter.

[16] Complaint ¶ 38 at 7; *see also* Letter.

[17] Letter at 1.

[18] Complaint ¶¶ 39–40 at 7.

[19] *Id*. ¶ 42 at 7.

[20] *Id*. ¶ 43 at 7.

The Seymours allege that Perkins' search and seizure of their Computers is due to a long-standing grudge Perkins has against the Seymours, due in part to past actions taken by their son-in-law, Kevin Worlton ("Worlton"), when Worlton was Chief of Police of Escalante City.[21] The Seymours further allege that "Perkins has admitted to personal animus against them and their family members, and even communicated a scheme to prosecute them for invented allegations of tax evasion and/or embezzlement from their closely-held family business."[22] Perkins allegedly executed this scheme by conspiring with Travis to have Travis steal the Computers and turn them over to Perkins to search for evidence of criminal activity.[23] The Seymours allege that Perkins knew the Computers were stolen and that Perkins "arranged to personally receive the stolen property from Travis."[24]

Based on these events ("Events"), the Seymours filed their Complaint against Perkins and the County, alleging five causes of action:

- First and Second Causes of Action: unlawful seizure and unlawful search in violation of the Fourth Amendment ("Unlawful Search and Seizure Claims");[25]

- Third Cause of Action: deprivation of property without procedural due process under the Fourteenth Amendment ("Procedural Due Process Claim");[26]

- Fourth Cause of Action: deprivation of property without substantive due process under the Fourteenth Amendment ("Substantive Due Process Claim");[27] and

---

[21] *Id.* ¶¶ 3–17 at 2–4.

[22] *Id.* ¶ 31 at 6.

[23] *Id.* ¶¶ 32, 36, 103 at 6, 15.

[24] *Id.* ¶ 36 at 6.

[25] *Id.* ¶¶ 46–72 at 8–11.

[26] *Id.* ¶¶ 73–86 at 11–13.

[27] *Id.* ¶¶ 87–102 at 13–15. The Procedural and Substantive Due Process Claims are brought under both the Fifth and Fourteenth Amendments, but "[the Seymours] allege[] conduct only done by state authorities, and thus there can be no Fifth Amendment claim" because "[t]he Due Process Clause of the Fifth Amendment applies only to action by the federal government while the Due Process Clause of the Fourteen Amendment applies to actions by state governments." *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013).

- Fifth Cause of Action: civil conspiracy ("Conspiracy Claim").[28]

**Summary of the Motion**

Perkins' Motion raises the defense of qualified immunity against all of the Seymours' claims.[29] Because the Seymours fail to meet their burden to show that qualified immunity does not apply, the Seymours' claims against Perkins will be dismissed with prejudice.

The County asserts all claims against it should be dismissed because the Seymours cannot show any underlying constitutional violations.[30] As discussed below, the County is entitled to judgment as a matter of law for the Procedural Due Process and Substantive Due Process Claims. For the Unlawful Search and Seizure Claims, the County is not entitled to judgment as a matter of law because whether Perkins had apparent authority to search the Computers is a material issue of fact that cannot be resolved on this Motion. The County is also not entitled to judgment as a matter of law for the Conspiracy Claim because the Seymours adequately pleaded the elements of a civil conspiracy claim.

**STANDARD OF REVIEW**

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is evaluated by the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim.[31] The plaintiff's complaint must "sufficiently allege[] facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."[32] All facts pleaded by the non-moving party are accepted as true as well as all reasonable inferences in

---

[28] Complaint ¶¶ 103–111 at 15–17.

[29] Motion at 1–2.

[30] *Id*. at 2.

[31] *See, e.g.*, *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013); Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 12(b)(6).

[32] *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

favor of the same.[33] The factual details supporting a claim must be great enough to make the claim plausible, rather than merely possible; i.e., "enough to raise a right to relief above the speculative level. . . ."[34] It must be reasonable for a court to draw the inference that the defendant is liable, based on the facts stated.[35] Recitations of elements of a claim and conclusory statements lack sufficient detail, and cannot trigger a court's assumption that all of the statements made in the pleading are true.[36] "[A court's] function on a Rule [12(c)] motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[37]

"A motion for judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[38]

## ANALYSIS

### I. Analytical Framework for Qualified immunity

The doctrine of qualified immunity allows government agents to avoid litigation and liability for constitutional violations unless the violation was of clearly established law.[39] "Qualified immunity balances two important interests—the need to hold public officials

---

[33] *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (citing *Park Univ. Enterprises, Inc. v. Am. Cas. Co. Of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006) (*abrogated on other grounds*).

[34] *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).

[35] *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[36] *Id*. at 663.

[37] *Gilchrist v. Citty*, 71 F. App'x 1, 2–3 (10th Cir. 2003) (unpublished) (internal quotation marks and citations omitted).

[38] *Burke*, 698 F.3d at 1228 (internal quotation marks and citation omitted).

[39] *See Mocek v. City of Albuquerque*, 813 F.3d 912 (10th Cir. 2015); *see also Pearson v. Callahan*, 555 U.S. 223 (2009).

accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[40]

"After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff."[41] "Individual government actors are immune from suit under § 1983 . . . unless a plaintiff demonstrates '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'"[42] This "heavy two-part burden" rests solely on the plaintiff.[43]

The second prong of the qualified immunity defense places the burden on the plaintiff to show that the "infringed right at issue was clearly established at the time of the allegedly unlawful activity such that a reasonable law enforcement officer would have known that his or her challenged conduct was illegal."[44]

Generally, plaintiffs may meet their burden by articulating the facts of their own case, citing to prior circuit and Supreme Court cases with comparable facts, and arguing the applicability of the cited cases to their own case.[45] Plaintiffs should show that the prior, comparable cases clearly put their defendants on notice that defendants' actions and behavior violated the plaintiffs' constitutional rights as established in the cited cases.[46]

---

[40] *Pearson*, 555 U.S. at 231.

[41] *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

[42] *Mocek*, 813 F.3d at 922 (citing *Ashcroft v. al–Kidd,* 563 U.S. 731, 735 (2011)).

[43] *Medina*, 252 F.3d at 1128 (internal quotation marks and citation omitted).

[44] *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013) (citation omitted).

[45] *See Archuleta v. Wagner*, 523 F.3d 1278, 1283, 1286–7 (10th Cir. 2008) (citation omitted); *see also Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1310–12 (10th Cir. 2021).

[46] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.")

However, the Tenth Circuit has "adopted a sliding scale to determine when law is clearly established"[47] and "there need not be precise factual correspondence between earlier cases and the case at hand, because general statements of the law are not inherently incapable of giving fair and clear warning."[48] And "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."[49] Once the plaintiffs have cited to caselaw supporting the plaintiffs' argument that the constitutional right is clearly established, a court "is not limited to the opinions cited by [the plaintiffs]" and will consider "all relevant case law."[50] However, the requirement that "[a] court engaging in review of a qualified immunity judgment should . . . use its full knowledge of its own [and other relevant] precedents"[51] does not change that "[t]he plaintiff bears the burden of citing to us what [the plaintiff] thinks constitutes clearly established law."[52]

The Tenth Circuit has affirmed district court decisions granting qualified immunity to defendants when plaintiffs failed to address the second prong of the defense. In *Smith v. McCord*,[53] summary judgment was granted to defendants because Smith's attorney "failed even to include the terms 'qualified immunity' or 'clearly established'" in his opposition and instead focused only on whether a material dispute of fact existed.[54] In *Rojas v. Anderson*,[55] Rojas's attorney similarly focused only on whether a material dispute of fact existed and failed to cite a

---

[47] *Davis v. Clifford*, 825 F.3d 1131, 1136 (10th Cir. 2016) (citation omitted).

[48] *Archuleta*, 523 F.3d at 1283 (citation omitted).

[49] *Clifford*, 825 F.3d at 1136 (citation omitted).

[50] *Williams v. Hansen*, 5 F.4th 1129, 1133 (10th Cir. 2021).

[51] *Elder v. Holloway*, 510 U.S. 510, 516 (1994) (quotation marks and citation omitted).

[52] *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) (citation omitted).

[53] 707 F.3d 1161 (10th Cir. 2013).

[54] *McCord*, 707 F.3d at 1162.

[55] 727 F.3d 1000 (10th Cir. 2013).

single case or discuss whether the infringed right was clearly established at the time of the allegedly unlawful activity.[56]

      As the Tenth Circuit has noted in such cases, when plaintiffs fail to satisfy the heavy burden required to defeat qualified immunity, this does not mean those plaintiffs' cases have no merit.[57] Instead, it is counsel's failure of meeting the legal burden of the qualified immunity defense that results in dismissal.[58]

## II. Claim by Claim Analysis – Claims against Perkins

      **A.** _**Unlawful Search and Seizure Claims:**_

      **(1)**    **The Seymours adequately pleaded their Unlawful Search and Seizure Claims against Perkins.**

      The Fourth Amendment requires "adherence to judicial processes" and "searches conducted outside the judicial process, without approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."[59]

      The Seymours allege that Perkins' seized and searched the Computers without a warrant, subpoena, probable cause, exigent circumstances, or other legal basis.[60] The Seymours also allege that Perkins knew the Computers were stolen when he received the Computers and searched them.[61]

---

[56] _Rojas v. Anderson_, 727 F.3d 1000, 1004–05 (10th Cir. 2013).

[57] _See McCord_, 707 F.3d at 1162; _see also Rojas,_ 727 F.3d at 1005–6.

[58] _Id._

[59] _Katz v. United States_, 389 U.S. 347, 357 (1967) (quotation marks and citations omitted).

[60] Complaint ¶ 37 at 6.

[61] _Id._ ¶ 36 at 6.

Perkins does not contest that the Seymours' Computers were seized.[62] The Garfield Defendants originally asserted the Computers were not searched,[63] but even if the Computers were searched, Perkins argues that the consent exception to the general rule applies to the Seymours' Unlawful Search and Seizure Claims.[64] "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."[65] Perkins argues that Travis had apparent authority to consent to the search and seizure of the Property because Travis was an employee of one of the Seymours' businesses.[66] "[A] third party who voluntarily consents to the search of commonly held property must have actual or apparent authority to do so."[67] Perkins asserts that "[o]ther courts have found that employees *may* have authority to provide consent to search an employer's property" and cites to out-of-circuit case law[68] in support of his assertion.[69] Perkins also argues that the Seymours did not allege that Perkins knew Travis had been fired.[70]

---

[62] Motion at 6–9.

[63] *Id*. at 4; Complaint ¶ 45 at 8.

[64] Motion at 6–9.

[65] *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations omitted).

[66] Motion at 8.

[67] *United States v. Thompson*, 524 F.3d 1126, 1132 (10th Cir. 2008) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)).

[68] The three cases Perkins cites are not only out-of-circuit cases, but the court in each case found an employee had apparent authority to consent to a search or seizure only after a careful review of the established facts. None of the cases were decided at the pleadings stage of the proceedings. *See United States v. Buettner-Janusch*, 646 F.2d 759, 764–66 (2d Cir. 1981) (after criminal trial, holding undergraduate research assistant with access and common authority over the lab had apparent authority to consent to a search after a careful review of the established facts); *United States v. Murphy*, 506 F.2d 529, 530 (9th Cir. 1974) (after criminal trial, holding that employee who was given the key to the warehouse had apparent authority to consent to a search after "considering all of the circumstances surrounding the search"); *United States v. Anderson*, No. 206-CR-127, 2007 WL 1121319, at *1 (N.D. Ind. Apr. 16, 2007) (after hearing testimony on motion to suppress, finding that computer technician had apparent authority to consent to a search of defendant's computer based on the facts).

[69] Motion at 7.

[70] *Id*. at 9.

The Seymours do not allege exactly when Perkins was told the Computers were stolen; just that he knew the Computers were stolen when he received them from Travis.[71] Based on this allegation, the Seymours conclude that Perkins' assertion that he obtained consent from Travis is unreasonable.[72] The Seymours' alleged timeline is as follows:

- June 9, 2020 – Travis stole the Computers.[73]

- June 10, 2020 – the Seymours reported the theft to Perkins' office.[74]

- June 11, 2020 – the Seymours terminated Travis from his employment.[75]

- On or about June 19, 2020 – Perkins' office seized the Computers, nine days after the theft was reported, and eight days after Travis was terminated.[76]

- June 23, 2020 – the Seymours' counsel served the Letter on Perkins requesting the return of the Computers, noting a conversation that occurred between Jeanne and Perkins about the Computers and Perkins confirmed that his office took possession of the Computers on or around June 19, 2020.[77]

The alleged timeline shows that the theft report and Travis' termination occurred prior to the seizure of the Computers. Therefore, Perkins' Office (if not Perkins himself) should have known the Computers were stolen prior to the June 19th seizure. Perkins' consent defense cannot be decided on this Motion because it raises material issues of fact. "Whether apparent authority exists is an objective, totality-of-the-circumstances inquiry into whether the facts available to the

---

[71] Complaint ¶ 36 at 6.

[72] Opposition at 5–7.

[73] Complaint ¶ 33 at 6.

[74] *Id*. ¶ 34 at 6; Letter at 1.

[75] Letter at 1.

[76] Complaint ¶ 37 at 6.

[77] *Id*. ¶ 38 at 7; *see also* Letter.

officers at the time they commenced the search would lead a reasonable officer to believe the third party had authority to consent to the search."[78]

Because Perkins' knowledge about the theft of the Computers is unknown, it is not possible to determine whether Travis had apparent authority to give consent to the search and seizure of the Computers. Perkins also asserts that the Seymours do not allege that Perkins knew Travis had been terminated from his job,[79] but the allegation that Perkins knew the computers were stolen is sufficient to create a material issue of fact about Perkins' knowledge at the time he received the Computers. The Seymours adequately pleaded constitutional violations of their Fourth Amendment rights to be free from unlawful searches and seizures against Perkins.

### (2)   The Seymours fail to show the alleged Fourth Amendment search and seizure were violations of clearly established law.

In their Opposition, the Seymours say that "[u]nder 'ordinary' circumstances, there should be no dispute that Plaintiffs have alleged violations of their clearly established constitutional rights, rebutting any presumption of qualified immunity."[80] They include no supporting citation with this statement. The Seymours then attack each case Perkins cites in his argument that apparent authority justifies the search and seizure of the Computers.[81] The Seymours do *not* cite any case with comparable facts to show that Perkins' alleged actions constitute a clearly established violation of the Seymours' rights.[82]

---

[78] *United States v. Andrus*, 483 F.3d 711, 716–17 (10th Cir.), *decision clarified on denial of reh'g*, 499 F.3d 1162 (10th Cir. 2007) (citing to *Rodriguez*, 497 U.S. at 188); *see also United States v. Sanchez*, 608 F.3d 685, 689 (10th Cir. 2010) (finding daughter of defendant had authority to consent to a search of the home after reviewing the evidence); *Thompson*, 524 F.3d at 1133 (finding the landlord had authority to consent to the search of defendant's room based on review of the facts).

[79] Motion at 9.

[80] Opposition at 4.

[81] *Id*. at 5–6.

[82] *See id*. at 4–7; *see also* Reply at 8–9.

Unfortunately, the Seymours' one bare assertion in their Opposition and stated above,[83] with nothing more, cannot satisfy their heavy burden. This failure is fatal to the Seymours' Unlawful Search and Seizure Claims against Perkins. "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense."[84] The Unlawful Search and Seizure Claims against Perkins fails the second prong of the qualified immunity defense and will be dismissed with prejudice.

### B. _The Procedural Due Process Claim against Perkins will be dismissed because the Seymours have adequate postdeprivation remedies:_

"The Fourteenth Amendment to the United States Constitution provides that a State shall not deprive any person of life, liberty, or property, without due process of law."[85] "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment."[86]

"[Courts] engage in a two-step inquiry [in determining whether an individual's procedural-due-process rights were violated]: (1) Did the individual possess a protected property interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?"[87]

---

[83] "Under 'ordinary' circumstances, there should be no dispute that Plaintiffs have alleged violations of their clearly established constitutional rights, rebutting any presumption of qualified immunity." Opposition at 4.

[84] _A.M. v. Holmes,_ 830 F.3d 1123, 1134–35 (10th Cir. 2016) (citations omitted).

[85] _Town of Castle Rock, Colo. v. Gonzales_, 545 U.S. 748, 755 (2005) (quotation marks and citation omitted).

[86] _Mathews v. Eldridge_, 424 U.S. 319, 332 (1976).

[87] _Camuglia v. The City of Albuquerque_, 448 F.3d 1214, 1219 (10th Cir. 2006) (citing _Clark v. City of Draper,_ 168 F.3d 1185, 1189 (10th Cir.1999)).

There is no dispute that the Seymours' interest in the Computers is a protected property interest under the Fourteenth Amendment.[88]

The appropriate level of process for the deprivation of a property interest is "some form of hearing."[89] "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"[90]

However, even if deprivation of property is caused by an unauthorized, intentional act by a state employee, not pursuant to an established state procedure, procedural due process will be satisfied "if a meaningful postdeprivation remedy for the loss is available."[91] Perkins does not directly argue that his act of taking the Computers was unauthorized but instead asserts he "temporarily seized the property because, according to Travis, the computers from his family's business potentially held evidence of criminal activity."[92] Perkins argues the Seymours do not allege he accepted the Computers as an established state procedure[93] and the Seymours ultimately agree the Computers were taken contrary to established state procedure.[94] So the question becomes whether the Seymours had a "meaningful postdeprivation remedy."[95]

---

[88] *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571–72 (1972) ("The Court has also made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money."); *see also* Motion.

[89] *Mathews*, 424 U.S. at 333 (citations omitted).

[90] *Id*. at 333 (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

[91] *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

[92] Motion at 11–12.

[93] Motion at 11.

[94] *See* Opposition at 12 ("The 'established state procedure' is to seek a warrant for the seizure and search of the computers. And the fact that Defendants exerted control over the computers without even attempting to adhere to such a process is one of the primary theories of liability in this case. Plaintiffs' claims survive dismissal precisely because they allege that Defendants acted outside of all constitutionally sound procedures . . . ")

[95] *Hudson*, 468 U.S. at 533.

Perkins discusses three potential remedies the Seymours have under Utah law for the temporary seizure of their Computers: (1) Utah Code § 24-3-104, which allows a claimant to file a petition for the return of property being retained as evidence; (2) Utah Code § 63G-7-301(2)(a), a section of the Governmental Immunity Act of Utah ("GIAU") that provides a waiver of immunity by the government for any action brough to recover personal property; and (3) Article 1, § 22 of the Utah Constitution, which provides a private right of action for the taking of private property by the government for public use without just compensation ("Takings Clause").[96]

The Seymours argue that: (1) they already used Utah Code § 24-3-104 to get their Computers back; (2) the GIAU does not contain a private cause of action; and (3) the Takings Clause is not applicable here because the Computers were not taken for public use.[97]

The Seymours further argue that no state law remedy allows for recovery of "the monetary harm that resulted from Plaintiffs being without their computers for an extended period of time."[98] The Seymours' argument fails. Based on the Seymours' allegations, the Takings Clause may provide the compensation the Seymours seek and does apply in this case because the Computers were taken for public use under Utah law.

The Utah Supreme Court said "it is well settled that Utah's constitutional guarantee of just compensation [provided by the Takings Clause] is triggered when there is any substantial interference with private property which destroys or materially lessens its value, or by which the owner's right to its use and enjoyment is in any substantial degree abridged or destroyed."[99] The Takings Clause is self-executing, meaning that it "can be judicially enforced without

---

[96] Motion at 12.

[97] Opposition at 12–13.

[98] Id. at 13.

[99] Utah Dep't of Transp. v. Admiral Beverage Corp., 2011 UT 62, ¶ 22 (citation omitted) (emphasis added).

implementing legislation."[100] There are two steps in the takings analysis: (1) "a claimant must demonstrate some protectable interest in property";[101] and (2) "the claimant must show that the property interest was taken or damaged by government action."[102] "A claimant who makes this showing is then entitled to just compensation."[103] When the requirement of just compensation is triggered, the property owner is "entitled to compensation to the extent of the damages suffered."[104] "This has been interpreted to require that the owners must be put in as good a position money wise as they would have occupied had their property not been taken."[105]

The Seymours allege they have a property right in the Computers[106] and that the Computers were taken by government action.[107] "[T]o the extent that property exists and to the extent [the Seymours have] legal rights in that property," the Seymours may recover for the taking of the Computers under the Takings Clause.[108] The damages the Seymours may receive, specifically for the alleged harm of being without their Computers, will be determined by the state court and will require a showing and finding of the damages suffered and what amount of damages would return the Seymours to the financial position they would be in if the Computers had not been taken.

The Seymours argument that the Computers were not taken for public use is incorrect, because "[p]hysical takings without just compensation are unconstitutional *without regard to*

---

[100] *Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cty. Sch. Dist.*, 2000 UT 87, ¶ 7.

[101] *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 31.

[102] *Id.*

[103] *Admiral Beverage Corp.*, 2011 UT at ¶ 22 (quotation marks and citation omitted).

[104] *Id.* at ¶ 28 (quotation marks and citations omitted).

[105] *Id.*

[106] Complaint ¶ 48 at 8.

[107] *Id.* ¶¶ 37, 44, 54–55, 75 at 6, 7, 9, 11.

[108] *Colman v. Utah State Land Bd.*, 795 P.2d 622, 626 (Utah 1990)

*whether the action achieves an important public benefit* or has only minimal economic impact on the owner."[109]

Perkins cites to *Pinder v. Mitchell*[110] in support of his argument that the Seymours have adequate postdeprivation remedies under Utah law. In *Pinder*, the Pinders brought a § 1983 procedural due process claim to recover guns that were taken during a murder investigation of the Pinders' son. The district court ruled that the Pinders' claims were not ripe because they had adequate state-court postdeprivation remedies to recover both the guns and compensation for the deprivation of property over the past 18 years and had failed to exhaust those remedies.[111] The Tenth Circuit agreed.

The Pinders also raised the same argument as the Seymours – that there was no state procedure available to compensate for the losses resulting from the deprivation of property over time. The Tenth Circuit confirmed that the Takings Clause of the Utah Constitution may allow for this type of compensation,[112] and again confirmed this same point in *United States v. Bacon*, a decision published in 2018.[113] The Seymours, like the Pinders, have a remedy for their loss of the use of the Computers under the Takings Clause.

Finally, the Seymours' argument that their Procedural Due Process Claim survives dismissal "precisely because they allege that Defendants acted outside of all constitutionally sound procedures and contrary to due process of law"[114] is more properly considered under their

---

[109] *Am. W. Bank Members*, 2014 UT at ¶ 32 (citation omitted) (emphasis added).

[110] *Pinder v. Mitchell*, 658 F. App'x 451 (10th Cir. 2016) (unpublished).

[111] *Id*. at 453.

[112] *Id*. at 456.

[113] *United States v. Bacon*, 900 F.3d 1234, 1238–39 (10th Cir. 2018) ("Moreover, as we pointed out in *Pinder*, the Utah Constitution contains a "self-executing" clause which permits a claimant to seek just compensation for the government's taking or damaging of private property.")

[114] Opposition at 12.

Unlawful Search and Seizure Claims, which, if successful against the County, may provide compensation for the deprivation of the Seymours' Computers. "The more general due process considerations of the Fourteenth Amendment are not a fallback to protect interests more specifically addressed by the Fourth Amendment in this context."[115] Because the Seymours have adequate postdeprivation remedies for the deprivation of their property, the Procedural Due Process Claim against Perkins will be dismissed.

C. **The Substantive Due Process Claim against Perkins will be dismissed because Perkins' alleged actions and the Seymour's alleged injuries are not conscience shocking.**

"The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges."[116] "Conduct that shocks the judicial conscience . . . is deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice."[117] "To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or employ[ed] it as an instrument of oppression."[118] But "[i]ntentionally or recklessly causing injury through the abuse or misuse of governmental power is not enough."[119] "The behavior complained of must be egregious and outrageous."[120] Substantive due process protections apply only "to transgressions *above and beyond* those covered by the ordinary civil tort system; the two are not coterminous."[121]

---

[115] *Becker v. Kroll*, 494 F.3d 904, 918–19 (10th Cir. 2007) (citations omitted).

[116] *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013) (citation omitted).

[117] *Id*. (citation omitted).

[118] *Id*. (quotation marks and citation omitted).

[119] *Onyx Properties LLC v. Bd. of Cty. Commissioners of Elbert Cty.*, 838 F.3d 1039, 1048–49 (10th Cir. 2016) (citation omitted.

[120] *Hernandez*, 734 F.3d at 1261; *see also Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008); *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir.1995).

[121] *Berney*, 519 F.3d at 1220 (emphasis in original).

The level of harm the Seymours allege is not sufficient for a substantive due process violation. "[T]he plaintiff must demonstrate a degree of outrageousness and *a magnitude of potential or actual harm* that is truly conscience shocking."[122]

The Seymours allege that: (1) Perkins worked with Travis to obtain the Computers;[123] (2) Perkins arbitrarily seized and searched the Computers;[124] (3) Perkins downloaded the Seymours' confidential tax and financial information;[125] and (4) Perkins sent the Computers to SBI, "hoping that a criminal investigation and prosecution would follow."[126] The harm to the Seymours was the temporary dispossession of their Computers[127] and the alleged illegal downloading of confidential tax and financial information.[128]

The Seymours cite to *Green v. Post*[129] to support their argument. In *Green*, Mr. Green was killed when Officer Post ran a yellow light while in pursuit of a potential suspect of a theft of $30 worth of gas. Post did not have his siren or lights on and struck Green when Green was turning left. The Tenth Circuit discussed the level of culpability by executive officers required for a substantive due process claim. While negligently inflicted harm is "categorically beneath the threshold of constitutional due process," culpability falling somewhere between negligence and less than intentional conduct may rise to a level of executive abuse of power that may shock

---

[122] *Uhlrig,* 64 F.3d at 574 (emphasis added).

[123] Complaint ¶ 94 at 14.

[124] *Id.* ¶¶ 89, 91 at 13, 14.

[125] *Id.* ¶¶ 90, 94, at 13, 14.

[126] *Id.* ¶ 94 at 14.

[127] *Id.* ¶ 100 at 15.

[128] *Id.* ¶¶ 90, 94, 96, 100 at 13–15. The Garfield Defendants do not address this allegation. Motion at 10. The Seymours also fail to address this allegation in their Opposition, and instead focus on Perkins' alleged motivation (the criminal prosecution of the Seymours) for the seizure of the Computers as his "conscience-shocking" behavior. Opposition at 9–10. The Seymours also cite no case law supporting the allegations in the Complaint that law enforcement officer's downloading of financial information is conscience-shocking.

[129] *Green v. Post,* 574 F.3d 1294 (10th Cir. 2009).

the conscience.[130] The Tenth Circuit further said that when executive officers have time to deliberate about their actions, the deliberate indifference standard applies, and plaintiffs will not be required to show the officer had an intent to harm them, but will be required to show "deliberate indifference to an extremely great risk of serious injury to someone in Plaintiffs' position."[131]

The Seymours argue the deliberate indifference standard applies here to Perkins' actions because no rapid response was required when he received the Computers, so he had time to deliberate.[132] However, whether the deliberate indifference standard applies to Perkins' actions is not dispositive.

The Seymours and Green suffered markedly different levels of harm and injuries. Green died because of Officer Post's actions. The Seymours' alleged injuries include the temporary dispossession of property and the downloading of sensitive financial documents. While the consequences of the loss of business computers and third-party possession of financial data are serious, the Seymours cite no case law holding that these injuries are serious enough to establish a substantive due process claim.

The Seymours do also allege that Perkins wanted to find evidence of crimes committed by the Seymours in order to prosecute them. To the extent the Seymours are arguing that the possibility of a prosecution based on Perkins' seizure and search of the Computers is sufficient to allege a substantive due process claim, their argument fails.

---

[130] *See Id*. at 1300.

[131] *Id*. at 1303 (emphasis added).

[132] Opposition at 8–10.

In *Becker v. Kroll*,[133] the Tenth Circuit discussed Justice Souter's concurrence in *Albright v. Oliver*. Justice Souter "suggested the possibility that initiating an unwarranted prosecution that is dismissed before trial *may in some unusual circumstances* result in substantive due process violations separate from a Fourth Amendment seizure."[134] Becker was investigated and prosecuted for Medicaid fraud, but the charges were dismissed due to irregularities in the investigation, including no documentation of key meetings between Becker and investigators, and the nondisclosure of potential exculpatory evidence. Becker argued that her substantive due process rights were violated when the defendants "engaged in a groundless investigation designed to obtain civil penalties from her."[135] The Tenth Circuit held that "this is not a case that reveals a substantial deprivation sufficient to rise to the level of a substantive due process violation."[136] The Seymours were not even prosecuted. Becker was both investigated and prosecuted, and her claim still failed.

The Seymours' Substantive Due Process Claim fails as a matter of law because they have not alleged facts sufficient to support their claim. While the Seymours have alleged intentional and arbitrary acts by Perkins, the harm allegedly caused by Perkins is not "*a magnitude of potential or actual harm that is truly conscience shocking.*"[137] The Seymours' Substantive Due Process Claim against Perkins will be dismissed with prejudice.

---

[133] *Kroll*, 494 F.3d 904 (10th Cir. 2007) (emphasis added).

[134] *Id*. at 922.

[135] *Id*.

[136] *Id*.

[137] *Uhlrig*, 64 F.3d at 574 (emphasis added).

### D. *Conspiracy Claim against Perkins:*

**(1)   The Seymours' adequately pleaded an underlying constitutional violation and the elements of a conspiracy.**

Perkins argues that the Conspiracy Claim against him fails because: (1) the Seymours fail to allege facts showing that Perkins violated the Seymours' constitutional rights; and (2) the Seymours did not allege there was a meeting of the minds between Travis and Perkins.[138] Perkins' argument fails.

A civil conspiracy claim requires a plaintiff to plead: (1) a deprivation of constitutional rights; and (2) the elements of a conspiracy.[139] The Seymours adequately pleaded a deprivation of their Fourth Amendment rights under their Unlawful Search and Seizure Claims as addressed above.

The elements of a conspiracy are: (1) "two or more persons acting in concert; and (2) an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective."[140] The Seymours "must allege specific facts showing an agreement and concerted action amongst the defendants because [c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."[141]

The Seymours have also adequately pleaded the elements of a conspiracy. They allege that:

> (1) Travis and Perkins had a common desire to find evidence of embezzlement or other crimes on the Computers in order to hurt the Seymours (two people with a general conspiratorial objective);[142]

---

[138] Motion at 13.

[139] *See Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990) (citation omitted).

[140] *Brooks v. Gaenzle*, 614 F.3d 1213, 1227–28 (10th Cir. 2010), *abrogated by Torres v. Madrid*, 141 S. Ct. 989 (2021) (citations omitted) (numbering added).

[141] *Id.* (quotation marks and citations omitted) (emphasis added).

[142] Complaint ¶ 104(c) at 16.

(2) Perkins reached an agreement with Travis to deprive the Seymours of their constitutional rights by seizing, searching, and refusing to return their property[143] and "work[ed] in tandem with . . . Travis . . . to seize their property"[144] (agreement, conspiratorial objective, plan); and

(3) Perkins arranged to receive the stolen property directly from Travis (concerted action by two people).[145]

Contrary to Perkins' assertion, a plaintiff is not required to use the words "meeting of the minds" to adequately plead a civil conspiracy claim. The Tenth Circuit explains:

"[a]n express agreement among all the conspirators is not a necessary element of a civil conspiracy. The participants in the conspiracy must share the general conspiratorial objective, but they need not know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result. To demonstrate the existence of a conspiratorial agreement it simply must be shown that there was a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences."[146]

The Seymours adequately pleaded their Conspiracy Claim against Perkins because they adequately alleged a Fourth Amendment constitutional violation and the elements of a conspiracy.

**(2)     The Seymours fail to show the alleged civil conspiracy was a violation of clearly established law.**

In discussing their Conspiracy Claim, the Seymours do not address whether the law was "clearly established."[147] They do not cite any case law with comparable facts to show that Perkins' alleged actions violated the Seymours' clearly established right.[148]

---

[143] *Id*. ¶ 103 at 15.

[144] *Id*. ¶ 94 at 14.

[145] *Id*. ¶ 104(a) at 15.

[146] *Snell*, 920 F.2d at 702 (quotation marks and citations omitted).

[147] Opposition at 14.

[148] *Id*.

The Conspiracy Claim will be dismissed because of the Seymours' failure to carry their burden on the second prong of the qualified immunity defense.

### III.   The Unlawful Search and Seizure Claims and the Conspiracy Claim against the County will not be dismissed because the Seymours' adequately pleaded these constitutional violations.

"Only individuals, not municipalities, are protected by qualified immunity."[149] "A plaintiff suing a municipality under § 1983 for the actions of one of its officers must prove [] that a municipal employee committed a constitutional violation . . ."[150]

The Garfield Defendants argue that because Perkins did not violate any of the Seymours' constitutional rights, the County cannot be held liable for any of the Seymours' § 1983 claims.[151] As discussed above, the Seymours adequately pleaded their Unlawful Search and Seizure Claims and Conspiracy Claim, so those claims against the County survive this Motion.

The Seymours' Procedural and Substantive Due Process Claims against the County fail because the Seymours failed to establish that Perkins violated those constitutional rights as discussed above.

### CONCLUSION AND ORDER

IT IS HEREBY ORDERED that the Garfield Defendants' Motion for Judgment on the Pleadings[152] is GRANTED in part and DENIED in part.

Because the Seymours failed to address the "clearly established" prong of the qualified immunity standard, Perkins is entitled to qualified immunity. All the Seymours' claims against

---

[149] *Camuglia*, 448 F.3d at 1223.

[150] *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004) (citation omitted).

[151] Motion at 13.

[152] Docket no. 16, filed Aug. 25, 2021.

Perkins in the First, Second, Third, Fourth, and Fifth Causes of Action are dismissed with prejudice.

The Seymours' Substantive and Procedural Due Process Claims (Third and Fourth Causes of Action) against the County are dismissed with prejudice because the Seymours failed to sufficiently allege facts supporting those claims.

The claims that survive the Motion are against the County: the Unlawful Search and Seizure Claims (First and Second Causes of Action) and the Conspiracy Claim (Fifth Cause of Action). Those claims are adequately pleaded and material issues of fact preclude dismissal of those claims at this stage.

Signed January 18, 2022.

BY THE COURT

David Nuffer
United States District Judge

26